The United States District Court

District of Massachusetts

Jane Doe

V.

(2) Unknown MEVA employees

Merrimack Valley Transportation Authority

FILED
Clerk's Office
USDC Mass.
Date 2/5/26
By
Deputy Clerk

COMPLAINT

1. The Plaintiff is a citizen of the United States.

2. The Defendants are providers for agencies of municipalities/providers for state/ federally funded programs as defined under U.S.C 42 2000d-4a./ separately, individually and corporately.  The (2) unknown males were acting as agents for the MEVA Corporation or organization at the time of the incident.

3. This court has original jurisdiction in this matter under 42 U.S.C. 1983, 1979, 1980, 1985, 1943, 28 U.S.C. 1343 and 18 U.S.C. 241

4. On January 19, 2026, between 5-7 p.m., in the McGovern Transportation Center in Lawrence MA, a bus passenger exited a bus on the outer bus platform, and walked toward the inner bus platform.  A gray Jeep SUV was parked on the first level of the garage shining its lights directly toward the inner bus platform, where the passenger walked and then was seated, on a bus bench.  The driver of the vehicle remained in the vehicle, with the lights facing the bus platform for several minutes.  The bus passenger remained near the bus bench, and shined her flashlight on the vehicle after several minutes.  The driver of the vehicle rolled the window down, and began yelling at the bus passenger.  The bus passenger stated to the driver of the vehicle that this was a public transportation center, that the lights of the vehicle were shining directly toward people walking on the platform and sitting, waiting for buses.  The driver of the vehicle was using a cell phone at the time.  He was wearing a yellow jacket. The bus passenger remained at the bench where her belongings were, and began to document the vehicle tag number (MA LKE 68).  The bus passenger heard the driver close by, yelling, turned around and was immediately assaulted by the driver of the vehicle.  The driver of the vehicle repeatedly, aggressively addressed the bus passenger as "buddie".

5. The bus passenger immediately tried to get assistance from the room where she had seen bus drivers enter. The assaulter was near that area, but on the other side of the active bus lane.  He was using a cell phone at the time.  At some point, she heard the assaulter saying "she's coming to our door right now." The bus passenger knocked on the door of the bus driver room, but no one responded.  The assaulter approached the bus passenger a second time, while she attempted to get assistance from the police station next to the bus driver room.  He continued to threaten the bus passenger, saying things like "let's go, buddie! Just you and me!" and "don't run away!" as she retreated toward the street, knocking on the door of the police station. The bus passenger noticed a Lawrence Police vehicle (483) leaving the LAZ Parking facility and intercepted it at the exit stop light.  He reluctantly rolled his window down, she notified him she had been assaulted, and he stated he would get someone to help.  He then immediately left the area.

6. The bus passenger walked several blocks in 20-degree weather to access a telephone. She notified Lawrence Police Department that she had been assaulted. She returned to the Transportation Center and witnessed a Lawrence Police Department vehicle drive by, without stopping. She waited several minutes, again walked several blocks, notified Lawrence Police Department, and again retuned to the transportation center. She knocked on the bus driver door again, and an obese male exited the room. She notified him she had been assaulted, and requested he contact the police. He was extremely dismissive, waiting several minutes before contacting the police department. Astonishingly, at this time, the bus passenger witnessed the assaulter, leave the area driving MEVA bus 2307 or 2304. (the bus driver who contacted the police left driving the other bus).

7. At this time, officer Flores and another unknown officer appeared. She reported what she had experienced, at which time both officers began to accuse the bus passenger, making comments like "no one else is complaining" and that the bus passenger was harassing the driver of the vehicle, that "maybe he was going to exit his vehicle." The police interview lasted approximately 15 minutes.

8. The bus passenger witnessed the police officers approach the LAZ office. She notified them that no one was in the office (the lights were off and had not been on whatsoever). The police, in fact, were permitted in to the office, the lights were then turned on. The police did not gain access to the video. The police returned to where the bus passenger was located and notified her that the assaulter admitted to "pushing" the bus passenger. That is not what occurred, and not what was reported to the police officers. However, the police stated that they were waiting for the assaulter to return. The police stated that the bus passenger could contact the police department the next day to obtain the police report. The bus passenger stated to the officers that she noticed they had not documented the tag number of the vehicle, at which time the officers became aggressive, saying "don't tell me how to do my job", causing the bus passenger to feel concerned, and leave the location.

9. The bus passenger noticed the assaulter driving out of the transportation center, in a MEVA bus as she walked down the street. Further, on January 20, 2026 when the bus passenger returned to the transportation center, she witnessed the assaulter approaching where she sat waiting for public transportation, again driving a MEVA bus. At this time, another MEVA bus driver, approached the bus passenger, glaring at her. Another vehicle appeared, backed in to a parking space on the first level, exactly across from where the bus passenger sat waiting for public transportation, leaving his lights on, facing her for several minutes. The tag of that VW vehicle was documented.

10. Due to the unlawful behavior of the assaulter, and the public transportation provider, the bus passenger

11. suffered emotional distress, due to the fact that the assaulter verbally threatened her, approached the bus passenger in the public facility, in 20-degree weather, degraded her in that he continued to address her as "buddie", physically assaulted her in front of other public transportation passengers who she must see every day, continued to follow her and physically threaten her as she was attempting to get help, was the provider of the  public facility, for which the bus passenger is a subject, and was allowed to continue to approach the bus passenger and other public transportation passengers, even after the crime was reported to police.

12. Wherefore, the bus passenger/Plaintiff requests damages in the amount of $10,000, and any other judgement this court deems reasonable.

Jane Doe

No Fixed Address

431 Common Street

Lawrence, MA 01840